**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| MORGAN KUKOVEC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 1:22-cv-01990 |
| *Plaintiff,* | Hon. Manish S. Shah, *presiding* <br> Hon. Young B. Kim*, Magistrate* |
| *v.* | [Defendant's Motion to Dismiss Complaint; Declarations of Aaron Charfoos, Karan Soni and Nicole Lehr  in support thereof; Request for Judicial Notice in support thereof filed and served herewith] |
| L'ORÉAL USA PRODUCTS, INC. D/B/A L'ORÉAL PARIS, | |
| *Defendant.* | |

---

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     STATEMENT OF FACTS .......................................................................... 2

      A.      The Allegations, Conspicuous Omissions, and Inaccuracies of the Complaint.................................................................................................. 2

      B.      The VTO Feature and Website Allegedly Accessed By Plaintiff.......................... 3

            1.      The Privacy Policy on the Website .......................................... 4

                  a.      What information is collected ....................................... 4

                  b.      The purpose of the collection and how the data is used ............... 5

                  c.      How long the data will be stored .................................... 5

                  d.      How the data is protected............................................. 6

            2.      The Terms of Use of the Website ............................................ 6

III.    DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(2) IS PROPER ........................... 7

      A.      L'Oréal Products is Not Subject to the General Jurisdiction of this Court........... 7

      B.      L'Oréal Products is Not Subject to the Specific Jurisdiction of this Court .......... 8

IV.     THIS ACTION SHOULD BE DISMISSED IN FAVOR OF ARBITRATION ............... 9

      A.      Plaintiff Entered Into an Enforceable, Binding Arbitration Agreement ............. 10

            1.      Plaintiff's Claims Fall Within the Arbitration Agreement. ...................... 11

            2.      The Website Terms of Use Are Enforceable. ................................. 11

            3.      Hyperlinks Are Sufficient to Form Enforceable Agreements.................. 12

            4.      Plaintiff Consented to the Privacy Policy and the Terms of Use............. 12

V.      THIS ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) ............ 13

      A.      Plaintiff Has Not Met and Cannot Meet Her Rule 8 Pleading Burden............... 13

      B.      Plaintiff Consented to A BIPA-Compliant Privacy Policy.................................. 14

      C.      Plaintiff Cannot Obtain Relief for Websites She Did Not Visit. ......................... 15

VI.     CONCLUSION........................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ........................................................................12

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ....................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................13, 14

*Bell. Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................13, 14

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .........................................................................11

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .....................................................................................14

*Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*,
417 F.3d 727 (7th Cir. 2005) .......................................................................................9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .....................................................................................................8

*Everette v. Union Pac. R.R.*,
No. 04 C 5428, 2006 WL 2587927 (N.D. Ill. Sept. 5, 2006) ......................................9

*Faulkenberg v. CB Tax Franchise Sys., LP*,
637 F.3d 801 (7th Cir. 2011) .....................................................................................10

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018) .................................13

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) .......................................................................................1

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) ..................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hubbert v. Dell Corp.*,
    835 N.E.2d 113 (Ill. App. Ct. 2005) ...................................................................................12

*Int'l Shoe Co. v. Wash. Off of Unemployment Comp. and Placement*,
    326 U.S. 310 (1945)...........................................................................................................7

*Janiga v. Questar Cap. Corp.*,
    615 F.3d 735 (7th Cir. 2010) ............................................................................................10

*Joyce v. DLA Piper Rudnick Gray Cary LLP*,
    888 N.E.2d 657 (Ill. App. Ct. 2008) ................................................................................11

*Kloss v. Acuant, Inc.*,
    462 F. Supp. 3d 873 (N.D. Ill. 2020) ...............................................................................14

*Kuznik v. Hooters of Am., LLC*,
    No. 1:20-CV-01255, 2020 WL 5983879 (C.D. Ill. Oct. 8, 2020).........................................9

*Lamps Plus Inc. v. Varela*,
    139 S. Ct. 1407 (2019)......................................................................................................11

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)...............................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..............................................................................................................11

*Nicholas v. Wayfair, Inc.*,
    410 F. Supp. 3d 448 (E.D.N.Y. 2019) ........................................................................12, 13

*Orgone Cap. II, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) .............................................................................................1

*Payton v. Cty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ............................................................................................15

*Perry v. Thomas*,
    482 U.S. 483 (1987)............................................................................................................9

*Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ..............................................................................................7

*Starke v. Gilt Groupe, Inc.*,
    No. 13 CIV 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)..................................12

## TABLE OF AUTHORITIES
(continued)

Page

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019) ................................................................... 11

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .................................................................. 8

*Tucker v. Charles Schwab Bank*,
    No. 12-CV-3399, 2013 WL 1337329 (N.D. Ill. Mar. 29, 2013) ............... 9

*Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020) ..................................................... 12

*Zhan v. Hogan*,
    No. 418CV04126SLDJEH, 2018 WL 9877970 (C.D. Ill. Dec. 18, 2018) ............. 10

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    417 F.3d 682 (7th Cir. 2005) .................................................................. 9

**Statutes**

9 U.S.C. § 2 ................................................................................................... 10

9 U.S.C. § 4 ................................................................................................... 9

Federal Arbitration Act ................................................................................ 6, 9

Illinois Biometric Information Privacy Act ("BIPA"),
    740 ILCS 14/1 *et seq* .......................................................... passim
    14/15 ..................................................................................................... 14
    14/20 ..................................................................................................... 15

**Other Authorities**

FED. R. CIV. P. 8 ......................................................................... 7, 9, 13, 14
    8(a) ....................................................................................................... 13

FED. R. CIV. P. 12 .................................................................... 2, 7, 9, 13
    12(b)(2) ................................................................................................. 7
    12(b)(3) ................................................................................................. 9, 13
    12(b)(6) ................................................................................................. 2, 13

## I. **PRELIMINARY STATEMENT**

The Complaint filed by Plaintiff Morgan Kukovec ("Plaintiff") against L'Oréal USA Products, Inc. ("L'Oréal Products") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"), suffers from three primary defects, each of which supports dismissing the Complaint with prejudice.

**First**, as Plaintiff and her counsel have been advised several times, Plaintiff sued the wrong entity—L'Oréal Products does not do business as L'Oréal Paris and does not own or operate the 'L'Oreal Paris' website," www.lorealparisusa.com, that Plaintiff allegedly visited and upon which she bases her claims. While this alone creates an independent basis for dismissal, the Court also lacks personal jurisdiction over the entity Plaintiff erroneously sued. L'Oréal Products is a manufacturing-focused Delaware corporation principally based in New York, and it does not have sufficient minimum contacts with Illinois for the exercise of personal jurisdiction in this case.

**Second**, per the clear and conspicuous Terms of Use,[1] posted by hyperlink on every page of the website that Plaintiff allegedly visited, Plaintiff agreed that L'Oréal USA, Inc. ("L'Oréal USA") or one of its affiliates, could "at its sole discretion" require her to arbitrate "any and all disputes and causes of action related to or connected with" L'Oréal USA's (or one of its affiliates') website(s)." (*See* Request for Judicial Notice ("RJN") Ex. B at 10.) Plaintiff's alleged use of the Virtual Try-On ("VTO") tool on www.lorealparisusa.com falls squarely within this arbitration provision, and as an affiliate of L'Oréal USA, L'Oréal Products has every right to enforce that provision and require Plaintiff to arbitrate her claims as she agreed.

---

[1] Judicial notice of the L'Oréal Paris website, including the Terms of Use and Privacy Policy linked to at every page therein, is appropriate given the allegations of the Complaint. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (affirming propriety of taking judicial notice of a website at issue in the underlying complaint in connection with a motion to dismiss); *Orgone Cap. II, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) (holding that courts may "take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings" when resolving motions to dismiss).

***Lastly***, even if the Court had personal jurisdiction over L'Oréal Products and Plaintiff's claims were not subject to mandatory arbitration, the case should be dismissed pursuant to Rule 12(b)(6) for two primary reasons. ***First***, **the Complaint does not satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 8**, as Plaintiff fails to allege with even minimal specificity that, how, or when L'Oréal Products, which **does *not* own or operate the website** upon which Plaintiff bases her claims**,** possessed or came to possess her biometric identifiers or information (together, "biometrics"), a requirement under BIPA. (*See* RJN Exs. A, B; Declaration of Aaron Charfoos ("Charfoos Decl.") ¶ 2; Dkt.1-1.) ***Second***, **Plaintiff cannot plead plausible claims given that she expressly consented to the BIPA-compliant Privacy Policy**—*i.e.*, the VTO tool is inaccessible from www.lorealparisusa.com unless a user consents to processing her image in accordance with a robust Privacy Policy that has the information required by BIPA, and Plaintiff even concedes receiving and reviewing the "Pop-Up." (*See* Dkt. 1-2 ¶¶ 20, 26, 36-37.)

In sum, because Plaintiff sued the wrong party, is contractually barred from pursuing her claims in this Court, and has not pled and cannot plead sufficient facts to support a legally cognizable claim against L'Oréal Products, her Complaint should be dismissed with prejudice.

## II.     <u>STATEMENT OF FACTS</u>

### A.     <u>The Allegations, Conspicuous Omissions, and Inaccuracies of the Complaint</u>

The Complaint is premised on Plaintiff's alleged visit to www.lorealparisusa.com on or around December 20, 2021, when she purportedly used a VTO tool to test how a lipstick would look if applied to her face. (Dkt.1-2 ¶¶ 31-32.) Plaintiff did not purchase that lipstick and did not set up an account on the website she visited. (*Id*. ¶ 33.) Based on this visit, Plaintiff asserts two counts under BIPA (sections 15(a) and (b)) against L'Oréal Products, and seeks to represent a class of Illinois residents who used a VTO tool not just on the website Plaintiff visited, but on eight other websites that she did not visit. (*See id*. ¶¶ 5-15, 25-29, 35, 37-40, 42, 47-53, 62, 65.)

However, **L'Oréal Products does not do business as L'Oréal Paris and does not own or operate www.lorealparisusa.com**. (*See* Dkt. 1-1 ¶ 5; Declaration of Nicole Lehr ("Lehr Decl.") ¶ 5.) Rather, as L'Oréal Products has repeatedly advised Plaintiff, and as the website she visited discloses, L'Oréal USA, a distinct corporate entity that is the indirect parent of L'Oréal Products, owns and operates www.lorealparisusa.com.[2] (*See id*.; Charfoos Decl. ¶ 2; RJN Exs. A at 2, B at 2.) The Complaint has no factual allegations to support a contrary conclusion.

**The Complaint also contains no specific factual allegations that connect L'Oréal Products to Illinois**, despite alleging in conclusory fashion that jurisdiction is proper. L'Oréal Products is, as Plaintiff alleges, a Delaware corporation with its principal place of business in New York. (Dkt. 1-2 ¶ 2; Dkt. 1-1 ¶ 3; Dkt. 3; Lehr Decl. ¶ 3.) L'Oréal Products focuses on manufacturing. (Dkt. 1-1 ¶ 5; Lehr Decl. ¶ 5.) It does not do business as L'Oréal Paris, and does not target or focus any activity relating to L'Oréal Paris-branded products specifically to customers or consumers in Illinois. (*Id*.) L'Oréal Products also does not have a physical presence in Illinois, and likewise does not have a mailing address or telephone listing in Illinois. (*Id*. ¶ 6.) Further, L'Oréal Products does not maintain any bank accounts in Illinois. (*Id*. ¶ 7.)

### B. The VTO Feature and Website Allegedly Accessed By Plaintiff

Plaintiff alleges on the one hand that there is no relevant written policy or release for www.lorealparisusa.com, but on the other hand alleges that she reviewed the detailed Privacy Policy for that website that addresses user-generated content including photographs (and the

---

[2] This is the second copycat of a previously dismissed action challenging a VTO tool on L'Oréal USA brand websites. *See Ferguson v. L'Oréal USA, Inc., et al.*, 3:21-cv-03175 (C.D. Ill.) (filed on June 17, 2021, and dismissed on March 1, 2022, after a technology review indicating the BIPA claims were not legally viable); *Lipscomb v. Giorgio Armani Corp.*, 1:22-cv-01039 (C.D. Ill.) (filed on February 9, 2022, and dismissed on April 11, 2022, following a similar technology review). Plaintiff filed her lawsuit against L'Oréal Products while these other two litigations were still pending, and her decision to persist with her lawsuit against L'Oréal Products, despite its clear lack of a connection to the website at issue, is highly dubious.

retention of such content). (Dkt. 1-2 ¶¶ 25-29, 31, 36-39.)  However, the way the system works is that prior to using the VTO tool on www.lorealparisusa.com, each visitor encounters a pop-up window that requires consent to the processing of the visitor's image ("Consent Pop-Up"):



(*Id*. ¶ 20; *see also* Declaration of Karan Soni ("Soni Decl."), Ex. B at 1-2; RJN Ex. C at 8-9.)  The Consent Pop-Up advises that the user may learn more by visiting a hyperlinked privacy policy ("Privacy Policy"). (*See id*.) The hyperlink is underlined and appears in a font color that contrasts with the background. (*Id*.) The Consent Pop-Up has been in place on www.lorealparisusa.com since the time that VTO first became publicly accessible on that website. (Soni Decl. ¶¶ 3-5.)

### 1.    The Privacy Policy on the Website

The Privacy Policy hyperlinked in the VTO Consent Pop-up is also accessible from conspicuous links appearing at the bottom of each webpage of www.lorealparisusa.com (*see, e.g.*, Soni Decl., Exs. A at 7, E at 2; RJN Exs. C and D), and Plaintiff alleges that she reviewed the Privacy Policy.  (*See* Dkt.1-2 ¶ 26 n.3.)  The Privacy Policy describes in detail what information, if any, may be collected from website users; the purpose for such collection and how the information will be used; how long the information will be stored; user rights regarding information return or deletion; and how the information is protected. (*See* Soni Decl. ¶ 6, Ex. C; RJN Ex. A.)

### a.    What information is collected

The Privacy Policy includes a detailed table of the personal information that may be

4

collected from website users, including "Identifiers", "Visual Information" and inferences that may be drawn from the same. (Soni Decl., Ex. C at 3-5; RJN Ex. A at 3-5.) The Privacy Policy additionally discloses, "If you use one of our virtual try on features, we may collect and store your image(s)." (*See* Soni Decl., Ex. C at 5; RJN Ex. A at 5.)

**b. <u>The purpose of the collection and how the data is used</u>**

The Privacy Policy comprehensively explains how data may be used, including for providing tailored and personalized content, services, ads and offers; fulfilling product purchases and processing payments; analyzing products and services to improve effectiveness of websites and offerings; conducting research and analytics; and enforcing the Terms of Use. (*See* Soni Decl., Ex. C at 7-8; RJN Ex. A at 7-8.) It also explains whether information is shared with third parties. For example, it states that L'Oréal USA (as the owner and operator of the website) does not sell Personal Information to third parties, but may share data with third party service providers acting on its behalf, and also with other entities and affiliates of L'Oréal USA. (*See* Soni Decl., Ex. C at 8-9; RJN Ex. A at 8-9.) These service providers are prohibited from using disclosed information for independent marketing or business purposes. (*Id*.)

The Privacy Policy also clarifies that user information may be disclosed to comply with a legal obligation; when the law requires it; at the request of government authorities; to verify or enforce the  hyperlinked "Terms of Use" or other policies; to respond to an emergency; or to protect rights, property, safety, or security of third parties, website visitors, or the public. (*See id*.)

**c. <u>How long the data will be stored</u>**

The Privacy Policy states that L'Oréal USA will retain user Personal Information as long as a user's account is active or as needed to provide services and as necessary to comply with legal obligations, resolve disputes, and enforce agreements. (*See* Soni Decl., Ex. C at 9; RJN Ex. A at

9.) Further, the Privacy Policy explains that users may request that L'Oréal USA not use their Personal Information, and details how users can submit such requests. (*See id.*)

### d. How the data is protected

Finally, the Privacy Policy details that "L'Oréal USA maintains reasonable safeguards to protect Personal Information against loss, unauthorized use, disclosure or destruction and when transferring information for processing and requires third parties providing services on our behalf to do the same." (*See* Soni Decl., Ex. C at 13; RJN Ex. A at 13.) Additionally, the Privacy Policy explains what may happen to user data if L'Oréal USA ceases to exist, including due to acquisition, bankruptcy or reorganization. (*See* RJN Ex. A at 9.)

### 2. The Terms of Use of the Website

The Privacy Policy also references and hyperlinks to the Terms of Use governing the website Plaintiff allegedly visited, and admonishes that those Terms of Use will be enforced. (*See* Soni Decl., Ex. C at 8, 14; RJN Ex. A at 8, 14.) In addition to being highlighted in the Privacy Policy, conspicuous links to the Terms of Use appear on other webpages where the VTO feature is available on the website that Plaintiff allegedly visited. (*See* Soni Decl., Exs. A at 7, E at 2; RJN Ex. C at 7.) The Terms of Use indicate that they "apply to all users of the Site" and that New York law governs use of the site. (Soni Decl., Ex. D at 2, 9; RJN Ex. B at 2, 9.) The Terms of Use includes the mandatory arbitration provision ("Arbitration Provision") depicted below, which confirms that website users agree that "L'Oréal USA or one of its affiliates" may require that any and all disputes and causes of action related to or connected with the websites, Terms of Use, and related offerings be resolved individually, and without resort to a class action, by arbitration under the rules of the American Arbitration Association ("AAA"), and with the Federal Arbitration Act ("FAA") governing interpretation and enforcement:

**Arbitration**

By using this Site, you agree that L'Oréal USA or one of its affiliates at its sole discretion, may require that: (1) any and all disputes and causes of action related to or connected with these Terms, the Site, and the related offerings shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association and held at the AAA regional office nearest the participant; (2) the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings at such arbitration; and (3) judgment upon such arbitration award may be entered in any court having jurisdiction. You understand and agree that you are waiving your right to sue or go to court to assert or defend your rights under this contract.

A printed version of the Terms of Use and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to the Terms of Use to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

These Terms of Use are the entire agreement between you and us with respect to the Site and any User Content and supersede all prior or contemporaneous communications and proposals (whether oral, written or electronic) between you and us with respect to those matters. If any provision of these Terms of Use is found to be illegal or unenforceable, the remainder of the Terms of Use shall be unaffected and shall continue to be fully valid, binding, and enforceable. The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further rights hereunder. No agency, partnership, joint venture, or employment relationship is created as a result of these Terms of Use, and neither party has any authority of any kind to bind the other in any respect.

(*See* Soni Decl., Ex. D at 10; RJN Ex. B at 10.)

### III.   DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(2) IS PROPER

The Complaint should be dismissed pursuant to Rule 12(b)(2) because Plaintiff cannot establish an adequate factual basis for this Court to exercise general or specific jurisdiction over L'Oréal Products. L'Oréal Products is solely a manufacturing company that principally operates in New York and does not do business as L'Oréal Paris or own or operate the website that Plaintiff allegedly visited. (*See* Dkt. 1-1 ¶ 5; Lehr Decl. ¶¶ 3, 5.) Where, as here, a defendant is not domiciled in Illinois and has not consented to jurisdiction in Illinois, due process only permits courts to exercise personal jurisdiction where the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash. Off of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (citation omitted). As shown above, *supra* II.A., and supported by the declarations of Karan Soni and Nicole Lehr, Plaintiff cannot meet her burden of demonstrating jurisdiction. *See Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) (in response to a 12(b)(2) motion, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

### A.   L'Oréal Products is Not Subject to the General Jurisdiction of this Court

While Plaintiff alleges in conclusory fashion that L'Oréal Products has purposefully

availed itself of the laws, protections, and advantages of Illinois (Dkt. 1-2 ¶ 3), the Complaint contains no facts to support this bare allegation. The Court cannot exercise general jurisdiction over L'Oréal Products because it does not have "continuous and substantial contacts" with Illinois that are "akin to those of a local enterprise that actually is 'at home' in the State." *Daimler AG v. Bauman*, 571 U.S. 117, 152 (2014). The "paradigm" bases for general jurisdiction are the "place of incorporation and principal place of business," *id*. at 137, and, as Plaintiff has conceded (Dkt. 1-2 ¶ 2), L'Oréal Products is incorporated in Delaware, not Illinois, and its principal place of business is New York, not Illinois.

### B. L'Oréal Products is Not Subject to the Specific Jurisdiction of this Court

Plaintiff also cannot satisfy the elements for specific jurisdiction, namely establishing through facts that: (1) L'Oréal Products purposefully availed itself of the privilege of conducting business in Illinois or purposefully directed its activities at Illinois; (2) Plaintiff's alleged injury arose from L'Oréal Products' alleged Illinois-related activities; and (3) the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. *See Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

Most obviously, Plaintiff cannot establish the second element, as L'Oréal Products does not do business as L'Oréal Paris and does not own or operate the website that Plaintiff allegedly visited and complains about. (*See* Dkt. 1-1 ¶ 5; Lehr Decl. ¶ 5; *see also* RJN Exs. A at 2, B at 2.) Plaintiff cannot establish the first element either, as L'Oréal Products does not target or focus any commercial activity relating to the L'Oréal Paris brand or website to Illinois, does not have a physical presence in Illinois, and does not have any significant connection to Illinois and the allegations of this case. (Lehr Decl. ¶¶ 5-7.) Similarly, L'Oréal Products' indirect affiliation with L'Oréal USA, the owner and operator of the website Plaintiff allegedly visited, does not yield a basis for Plaintiff to satisfy the first or third elements either. *See Tamburo*, 601 F.3d at 702

8

(attenuated contacts with the forum state do not satisfy purposeful availment).

As Plaintiff's visit to www.lorealparisusa.com does not support haling L'Oréal Products into Illinois courts, her claim against L'Oréal Products must be dismissed under Rule 12(b)(2). Alternatively, Plaintiff's failure to sue the correct entity, which actually owns and operates the website she visited, "provides the Court with an independent basis to dismiss [her] claims." *Tucker v. Charles Schwab Bank*, No. 12-CV-3399, 2013 WL 1337329, at *3 (N.D. Ill. Mar. 29, 2013).

## IV. **THIS ACTION SHOULD BE DISMISSED IN FAVOR OF ARBITRATION**

In the event that the Court does not dismiss this case pursuant to Rule 12(b)(2), this action should be dismissed with prejudice pursuant to Rule 12(b)(3) because Plaintiff agreed to arbitrate the claims of the Complaint at the election of L'Oréal USA or its affiliates, and L'Oréal Products is such an affiliate and so elects. "Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate." *Everette v. Union Pac. R.R.*, No. 04 C 5428, 2006 WL 2587927, at *3 (N.D. Ill. Sept. 5, 2006); *see also* 9 U.S.C. § 4 (indicating that where the Parties have agreed to arbitrate a dispute, the FAA—which is explicitly incorporated into the relevant Arbitration Provision (Soni Decl., Ex. D; RJN Ex. B[3])—authorizes and requires an "order directing that such arbitration proceed in the manner provided for in such agreement" and "at any place therein provided for"); *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements within the scope of the FAA must be rigorously enforced).

Under the FAA, there are three requirements for arbitration: (1) a written agreement; (2) a dispute within the scope thereof; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus.,*

---

[3] When ruling on a Rule 12(b)(3) motion to dismiss, the Court may consider materials outside the pleadings, including the arbitration agreement, without converting the motion to one for summary judgment. *Cont'l Cas. Co. v. Am. Nat'l. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Kuznik v. Hooters of Am., LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *3 (C.D. Ill. Oct. 8, 2020).

*Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). When, as here, the arbitration agreement incorporates rules of the AAA, the Court may only resolve issues pertaining to the first of these requirements, with the remaining two reserved for the arbitrator.[4]  *See Zhan v. Hogan*, No. 418CV04126SLDJEH, 2018 WL 9877970, at *10 (C.D. Ill. Dec. 18, 2018) (collecting cases, and holding that incorporation of AAA rules is "clear and unmistakable evidence that the parties intended for an arbitrator to decide questions of arbitrability"); *see also* AAA Commercial Arbitration Rules & Mediation Procedures ("AAA Rules"), R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim."). Plaintiff clearly entered into a written agreement to arbitrate the claims at issue, and her Complaint must therefore be dismissed.

### A.   Plaintiff Entered Into an Enforceable, Binding Arbitration Agreement

Plaintiff entered into an enforceable, binding arbitration agreement, and "[c]ourts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also* 9 U.S.C. § 2.  The existence of a binding arbitration agreement is a question of state contract law.  *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010).  New York law applies to this question because the Terms of Use identify it as the governing law. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citing *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 322 N.E.2d 454, 458 (1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed.")).  Under New York law, it is clear

---

[4] Even if the Court were to address the other two requirements, it would find these, too, support dismissal, as Plaintiff's claims are within the Arbitration Provision, and she filed a class action complaint, rather than comply with the individual disposition mandate of the Arbitration Provision. (*See* Soni Decl., Ex. D; RJN Ex. B.)

that Plaintiff must arbitrate her claims.[5]

### 1. Plaintiff's Claims Fall Within the Arbitration Agreement.

The Arbitration Provision encompasses Plaintiff's claims. It states that "L'Oréal USA or one of its affiliates . . . may require that: (1) any and all disputes and causes of action related to or connected with these Terms, the Site, and the related offerings shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association[.]" (*See* Soni Decl., Ex. D at 10; RJN Ex. B at 10.) Because Plaintiff's complaint is "related to or connected with" the Terms of Use and the L'Oréal Paris website, it is subject to the Arbitration Provision.[6]

### 2. The Website Terms of Use Are Enforceable.

New York courts have repeatedly upheld the enforceability of website Terms of Use. "[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010). Courts "look to the design and content of the relevant [web] interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). Courts may infer that a plaintiff, as a "reasonably prudent [internet] user," assented to terms of use based on placement on the website, textual references to the terms, and

---

[5] Even if the Court were to apply Illinois law, dismissal would still be warranted because the states' laws are substantially similar. *See Joyce v. DLA Piper Rudnick Gray Cary LLP*, 888 N.E.2d 657, 661–62 (Ill. App. Ct. 2008); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015).

[6] If there are "any doubts concerning the scope of arbitrable issues," those doubts would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Lamps Plus Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019).

inclusion of hyperlinks. *See Nicholas v. Wayfair, Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) ("In considering the question of reasonable conspicuousness, precedent and basic principles of contract law instruct that we consider the perspective of a reasonably prudent [ ] user.").[7]

Here, the website, www.lorealparisusa.com, puts anyone who uses it on notice that using the VTO tool first involves consenting to all Terms of Use, including the Arbitration Provision. *See supra* Section II.B. There are conspicuously displayed hyperlinks to the Terms of Use on the same webpage as the VTO tool, on every webpage of www.lorealparisusa.com, and within the Privacy Policy linked to at the Consent Pop-Up. This forms an enforceable arbitration agreement.

### 3.    Hyperlinks Are Sufficient to Form Enforceable Agreements.

New York law also favors enforceability of hyperlinked agreements. In *Meyer*, 868 F.3d at 78, the Second Circuit held that a plaintiff had agreed to arbitrate its claims based on "hyperlinks to the Terms and Conditions," which were underlined in a "dark print" that "contrast[ed] with [a] bright white background" and appeared "below the registration buttons." The hyperlink to the Terms of Use on www.lorealparisusa.com is just as conspicuous, and Plaintiff cannot avoid arbitration simply because the Arbitration Provision is hyperlinked in the Terms of Use. *See also Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020).

### 4.    Plaintiff Consented to the Privacy Policy and the Terms of Use.

Lastly, because Plaintiff necessarily and affirmatively clicked the "consent" button to use the VTO, she must arbitrate her claims under the Privacy Policy and the Terms of Use discussed and linked therein. *See Starke v. Gilt Groupe, Inc.*, No. 13 CIV 5497 LLS, 2014 WL 1652225, at

---

[7] Illinois law is consistent with New York law. *See, e.g.*, *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121-22 (Ill. App. Ct. 2005); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 965 (N.D. Ill. 2020).

*3 (S.D.N.Y. Apr. 24, 2014).[8] Plaintiff cannot avoid arbitration under these circumstances, nor by claiming she did not closely review the Terms of Use or the Arbitration Provision. *See Nicholas,* 410 F. Supp. 3d a, 454 (holding, "'failure to read a contract is not a defense to contract formation'") (*citing Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 50 (E.D.N.Y. 2017) (collecting cases)).

In sum, Plaintiff's attempted evasion of the Arbitration Provision by initiating a putative class action is impermissible. Plaintiff agreed to individually arbitrate all claims arising from her use of www.lorealparisusa.com, including any use of the VTO feature. She must abide by her agreement, and the Complaint should be dismissed in favor of arbitration under Rule 12(b)(3).

## V.     THIS ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

If the Court does not otherwise dismiss the case, the Complaint should be dismissed pursuant to Rule 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The Complaint fails to satisfy this standard.

### A.     Plaintiff Has Not Met and Cannot Meet Her Rule 8 Pleading Burden

The Complaint does not satisfy the requirements of Rule 8, because Plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *See Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 50 (2007); Fed. R. Civ. P. 8(a). Plaintiff suggests that L'Oréal Products markets and sells products on websites listed in the Complaint (Dkt. 1-2 ¶¶ 16-17), but alleges no facts to support her assertions. And she cannot do so. As stated above, L'Oréal USA Products does not own or control the website at issue or do business as L'Oréal Paris. Furthermore, each website listed in the Complaint identifies L'Oréal USA, a distinct corporate entity, as its owner

---

[8] *See also Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.,* No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018) (enforcing arbitration agreement in like circumstances).

and operator.  (RJN Exs. B and E; *see also* Soni Decl. Ex. F.)

Plaintiff's foundationless proclamations that VTO tools or websites are "Defendant's" (Dkt. 1-2 ¶¶ 23, 27, 36-37) and conclusory allegations that "Defendant" obtained her biometrics (*id.* ¶¶ 23, 27, 36-37, 53-54) also do not meet her pleading burden.  *See Iqbal*, 556 U.S. at 678.[9] Likewise, Plaintiff's speculative allegations concerning L'Oréal Products and biometrics, including those made "upon information and belief," (Dkt. 1-2 ¶¶ 29, 35, 39, 53-54, 62, 65-66), do not satisfy Rule 8.  *See Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (clarifying that plaintiffs pursuing relief under BIPA must provide at least "some specific facts to ground those legal claims").

Because sections 15(a) and (b) of BIPA require the defendant to have or have had the plaintiff's biometrics, 740 ILCS 14/15(a), (b), and Plaintiff has not pled and cannot plead factual allegations to make such conclusion plausible, the complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

### B.    Plaintiff Consented to A BIPA-Compliant Privacy Policy.

Plaintiff's Count I claim should also be dismissed because Plaintiff cannot plausibly plead a Section 15(b) violation.  Section 15(b) requires (1) informing consumers that their biometrics are being collected; (2) informing consumers of the specific purpose and length of term for which their biometrics are being collected; and (3) receiving an executed written release by the consumer. 740 ILCS 14/15(b).  *First*, Plaintiff received adequate written notice from the Privacy Policy at www.lorealparisusa.com that biometrics may be collected or stored. (*See* RJN Ex. A at 3-5 (indicating that users' "Identifiers" and "Visual Information" may be collected, and

---

[9] Plaintiff even contradicts her conclusory allegations concerning possession of biometrics, as in the Complaint she concedes that she does not know whether L'Oréal Products has biometrics from her or anyone in the putative class she seeks to represent.  (*See* Dkt. 1-2 ¶¶ 56, 57e, 68, 69e.)

unambiguously stating, "[i]f you use one of our virtual try on features we may collect and store your image(s).").)  **Second**, Plaintiff received adequate written notice (via the Privacy Policy) about the purpose of information collection, how data is used, how long the information is stored, all potential recipients of data and corresponding limitations placed thereon, what could happen to user information if L'Oréal USA ceases to exist, and precisely how users may request that L'Oréal USA not use their Personal Information. (*See* RJN Ex. A at 7-8, 9.)  **Third**, Plaintiff received and executed the requisite written release before accessing the VTO on www.lorealparisusa.com, when she clicked "I Consent" to the processing of her image, in accordance with the hyperlinked Privacy Policy in the VTO Consent Pop-Up.  (*See* Dkt.1-2 ¶¶ 20-21, 36; RJN Ex C.)

## C.   Plaintiff Cannot Obtain Relief for Websites She Did Not Visit.

Lastly, Plaintiff has not pled, because she cannot plead, a legally plausible claim based on websites she did not visit (*see* Dkt. 1-2 ¶¶ 31, 40), as there is no way for her to have been aggrieved therefrom.  *See* 740 ILCS 14/20.  As Plaintiff only allegedly visited and used the VTO tool challenged in the Complaint on www.lorealparisusa.com, she cannot obtain relief on behalf of a putative class of individuals who visited other websites. *See Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the backdoor of a class action.").

## VI.   CONCLUSION

For the foregoing reasons, L'Oréal Products requests that the Court dismiss this action with prejudice.

Dated: June 21, 2022                    Respectfully submitted,

                                        */s/ Aaron D. Charfoos*
                                        Aaron D. Charfoos (Bar No. 6277242)
                                        Adam M. Reich (Bar No. 6329295)
                                        Emma J. Lanzon (Bar No. 6329995)
                                        Paul Hastings LLP
                                        71 S. Wacker Drive, Suite 4500

15

Chicago, IL 60606
Telephone: 312.499.6000
aaroncharfoos@paulhastings.com
adamreich@paulhastings.com
emmalanzon@paulhastings.com

*Counsel for Defendant,*
L'ORÉAL USA PRODUCTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2022, a copy of the foregoing was filed electronically and served

via CM/ECF upon the following parties:

Elizabeth C. Chavez
Bret K. Pufahl
Kathleen C. Chavez
Peter L. Currie
Robert M. Foote
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: ecc@fmcolaw.com
     bkp@fmcolaw.com
     kcc@fmcolaw.com
     plc@fmcolaw.com
     rmf@fmcolaw.com

Hassan A. Zavareei
Allison W. Parr
Glenn E. Chappell
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
Email: hzavareei@tzlegal.com
     aparr@tzlegal.com
     gchappell@tzlegal.com

*Counsel for the Plaintiff and the Putative Class*


/s/ Melissa J. Failla

Melissa J. Failla